IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRETT KILLING<br>2351 South Bellwood Avenue<br>Niles, Ohio, 44446<br><br>Plaintiff,<br><br>v.<br><br>CRAFT AUTOMOTIVE REPAIR, LLC<br>d.b.a. "Auto Pros OH"<br>c/o Frank Wertenbach, Statutory Agent<br>4506 Belmont Avenue<br>Youngstown, Ohio, 44505<br><br>-and-<br><br>FRANK WERTENBACH<br>4506 Belmont Avenue<br>Youngstown, Ohio, 44505<br><br>Defendants. | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR VIOLATIONS OF**<br>**THE FAIR LABOR STANDARDS ACT**<br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiff, Brett Killing, by and through undersigned counsel, as his Complaint against Defendants, states and avers the following:

## **PARTIES**

1. Killing is a resident of the city of Niles, county of Trumbull, state of Ohio.

2. Craft Automotive Repair, LLC. ("Craft") is a domestic corporation with a principal place of business located at 4506 Belmont Avenue, Youngstown, Ohio, 44505.

3. Wertenbach was and/or is the owner, president, and/or principal of Craft.

## **PERSONAL JURISDICTION**

4. Defendants hire citizens of the state of Ohio, contracts with companies in Ohio, and own or rent property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

5. Killing performed work in this judicial district, was paid unlawfully by Defendants pursuant to work performed in this district and/or was hired out of this district.

6. This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Killing's state law claims under the Ohio Minimum Fair Wage Standards Act ("OMFWSA") and the Ohio Constitution, because those claims derive from a common nucleus of operative facts.

9. Venue is proper in this District because Defendants do a sizeable portion of their business in this District, and many of the wrongs herein alleged occurred in this District.

## COVERAGE

10. At all times referenced herein, Craft formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

11. At all times referenced herein, Wertenbach supervised and/or controlled the employment of Killing with Craft and acted directly or indirectly in the interest of Craft in relation to its employees, including controlling and/or establishing its day-to-day operations and respective

compensation practices; therefore, Wertenbach is an employer within the meaning of Article II, Section 34a of the Ohio Constitution and 29 § U.S.C. 203(d).

12. During all times material to this Complaint, Defendants were Killing's "employer" within the meaning of Section 3(d) of FLSA, 29 U.S.C. § 203(d); Section34a, Article II, of the Ohio Constitution; and the Ohio Minimum Fair Wages Standards Act ("OMWFSA").

13. At all times referenced herein, Killing was subject to individual coverage under the FLSA because his job duties required that he install automotive parts received from outside of Ohio and because he performed major repairs on automobiles that operated on interstate roads and highways.

14. At all material times, Defendants were employers within the meaning of the FLSA and the OMFWSA.

## FACTS

15. At all times referenced herein, Craft operated "Auto Pros," in Youngstown, Ohio, an automotive repair shop and used car dealership.

16. Killing is a former employee of Craft.

17. Craft hired Killing on or around March 5, 2019 as a mechanic.

18. At all times referenced herein, Killing was paid on an hourly basis.

19. Killing was paid $11.00 per hour.

20. Killings hours were recorded based on when he first reported to work until he left work for the day and were not related in any way to actual work Killing performed each day.

21. Killing's pay bore no relationship whatsoever to what Defendants charged customers for auto repair work.

22. Killing's pay was not a commission, but a flat hourly rate for each hour Killing worked.

23. Killing's work as an auto mechanic was integral to Craft's automobile service and sales business.

24. Killing's employment was not temporary and had no fixed end-date.

25. Killing was treated by Defendants as an at-will employee.

26. Killing was not required to use managerial skills to realize a profit or a loss; he was paid the same hourly rate throughout his entire period of employment for those hours Defendants chose to pay him.

27. While Killing did use some small and inexpensive personal tools in his work for Defendants, Killing was economically dependent on Defendants and did not invest his own money, equipment, or supplies into Defendant's business.

28. Killing's job duties did not require special skills besides general auto repair knowledge.

29. At all times material to the complaint, Defendants controlled Killing's employment, including his scheduled hours of work.

30. Killing was required to follow Defendants rules, policies, and procedures.

31. Killing was not free to fail to appear for work when Defendants scheduled him to work.

32. Killing was not conducting his own business while in the employ of Defendants.

33. Despite being labeled by Defendants as an independent contractor, Killing was in reality a non-exempt employee under the FLSA.

34. During Killing first two weeks of employment, he worked approximately 105 hours.

35. Defendants have never paid Killing for any of the hours he worked during his first two weeks of employment.

36. Defendants avoided paying Killing for the first two weeks of his employment by telling him that Craft's pay period "always runs one pay period behind."

37. During Killing's employment, he regularly worked in excess of 40 hours per week.

38. Defendants failed to pay Killing overtime for the hours he worked over 40, paying him a flat rate of $11.00 hour for all hours worked instead.

39. On May 13, 2019, Killing resigned his employment after Wertenbach screamed at Killing for leaving a tool in a customer's car.

40. Following Killing's resignation, Wertenbach began to devise ways to deprive Killing of his pay for his final weeks of employment with Defendants.

41. On May 14, 2019, Wertenbach called Killing and advised him that he was withholding $400.00 from Killing's pay because Killing allegedly failed to properly flare a brake line on a customers car during a brake job and $200.00 for a lost blue tooth scanner.

42. Wertenbach further advised Killing that he was "tallying everything up" and would let Killing know what other deductions would be made from him pay.

43. Killing did not hear from Wertenbach again after May 14, 2019.

44. Defendants failed to pay Killing any wages at all for the work he performed during the last pay period Killing worked prior to his resignation.

45. As a result of Defendants' unlawful conduct, Killing has suffered and continues to suffer damages.

### COUNT I: FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF THE FLSA (29 U.S.C. § 206).

46. Killing restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

47. Section 6 of the FLSA, 29 U.S.C. § 206, establishes the right to be paid minimum wages. Section 16(b) of the FLSA, 29 U.S.C. § 216(b), entitles an employee to recover all unpaid wages, an equivalent amount as liquidated damages, and reasonable attorneys' fees and costs.

48. Defendants failed and refused to pay Killing any wages at all for the first two weeks of his employment and for the last two weeks of his employment.

49. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

50. Defendants' failure and refusal to pay Killing overtime wages for all overtime hours Killing worked was willful, intentional, and not in good faith.

51. Killing is entitled to all legal and equitable remedies available for violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

## COUNT II: FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA, 29 U.S.C. § 207.

52. Killing restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

53. The FLSA requires each covered employer such as Craft to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

54. Killing was not exempt from the right to receive overtime pay under the FLSA during his employment with Defendants.

55. Killing is entitled to be paid overtime compensation for all overtime hours worked.

56. At all times relevant to this Complaint, Defendants had a policy and practice of failing and refusing to pay all overtime due to its employees for their hours worked in excess of 40 hours per week.

57. As a result of Defendants's failure to properly compensate Killing at a rate not less than 1.5 times his regular rate of pay for all work performed in excess of 40 hours in a work week, Defendants violated the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

58. Defendants's failure and refusal to pay Killing overtime wages for all overtime hours Killing worked was willful, intentional, and not in good faith.

59. Killing is entitled to all legal and equitable remedies available for violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

**COUNT III: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. § 4111.03, *et seq*, BASED ON FAILURE TO PAY OVERTIME.**

60. Killing incorporates by reference the allegations in the preceding paragraphs.

61. At all relevant times, Defendants have been, and continue to be, an "employer" within the meaning of the OMFWSA.

62. At all relevant times, Defendants have employed and continue to employ, "employees," within the meaning the OMFWSA.

63. Killing was an employee of Defendants as that term is defined by the OMFWSA.

64. Ohio R.C. § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

65. Defendants failed to pay Killing overtime for hours he worked in excess of 40 per week.

66. In denying Killing overtime compensation, Defendants violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

67. As a direct and proximate result of Defendant's unlawful conduct, Killing has suffered and will continue to suffer a loss of income and other damages.

68. Having violated the OMFWSA, Defendants are joint and severally liable to Killing pursuant to O.R.C. § 4111.10 for the full amount of her unpaid overtime and for costs and reasonable

attorneys' fees. Additionally, Defendants are joint and severally liable to Killing for an amount equal to twice his unpaid wages. O.R.C. § 4111.14(J).

### COUNT IV: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. § 4111.02, *et seq*, BASED ON FAILURE TO MINIMUM WAGE.

69. Killing incorporates by reference the allegations in the preceding paragraphs.

70. The OMFWSA requires that covered employees be compensated for every hour worked in a workweek including payment of all earned overtime compensation. See O.R.C. §§ 4111.01, et seq.

71. Respondents violated the OMFWSA by failing to pay Killing wages approximating at least the Ohio minimum wage for all hours worked by Killing.

72. As a direct and proximate result of Respondents' unlawful conduct, Killing has suffered and will continue to suffer a loss of income and other damages.

73. Having violated the OMFWSA, Respondents are liable to Killing pursuant to O.R.C. § 4111.10 for the full amount of his unpaid minimum wages; liquidated damages; and for Killing's costs and reasonable attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brett Killing requests judgment against all Defendants and for an Order:

a. Awarding Plaintiff unpaid minimum wages and overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

b. Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 et seq;

c. Issuing an injunction prohibiting Defendants from continued unlawful practices, policies and patterns set forth herein;

d. Awarding pre-judgment and post-judgment interest as provided by law;

e. Awarding reasonable attorneys' fees and costs; and

f.  Awarding such other and further relief that this Court deems appropriate.

        Respectfully submitted,

        */s/Chris P. Wido*
        Chris Wido (0090441)
        **THE SPITZ LAW FIRM, LLC**
        25200 Chagrin Boulevard, Suite 200
        Beachwood, Ohio 44122
        Phone: (216) 291-4744
        Fax:    (216) 291-5744
        Email: chris.wido@spitzlawfirm.com

        *Attorney for Plaintiff Brett Killing*

## JURY DEMAND

Plaintiff Brett Killing demands a trial by jury by the maximum number of jurors permitted.

        */s/Chris P. Wido*
        Chris P. Wido (0090441)
        **THE SPITZ LAW FIRM, LLC**